**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ : | | |
| PB BRANDS, LLC d/b/a PATEL BROTHERS, | : : | |
| | : | |
| Plaintiff, | : | Civil Action No. 07-4394 (JAG) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| PATEL SHAH INDIAN GROCERY, | : | |
| | : | |
| Defendant. | : | |
| _____: | | |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion of plaintiff, PB Brands, LLC, d/b/a Patel Brothers ("Plaintiff" or "Patel Brothers"), which seeks a preliminary injunction prohibiting defendant, Patel Shah Indian Grocery ("Patel Shah" or "Defendant") from using the name "Patel" or any similar name in commerce, and ordering Defendant to retract and impound all labels, signs, prints, packages, and advertisements bearing the name "Patel" or any variation of it.[1]  For the reasons set forth below, the request for a preliminary injunction will be denied.

**I.  Facts**

Patel Brothers, a family enterprise, is "an industry leader in the Indian grocery store and

---

[1]  As a preliminary matter, this Court notes that, since Plaintiff's arguments focused on the service mark "Patel Brothers," this opinion will treat the request as if it were seeking an injunction on the use of that mark, rather than the name "Patel," which is not registered as a service mark for either the retail or wholesale Indian grocery business.  If this Court considered Plaintiff's request on its face, the request would be summarily denied due to the lack of appropriate registration of "Patel."

food business," and is, according to Plaintiff, "the largest grocer of Indian food products in the United States." (Decl. of Rakesh Patel ¶ 2.) Patel Brothers operates directly, and through several licensees, a chain of Indian grocery stores under four different service marks.[2] (Id. at ¶ 3.) In addition to the service marks, Patel Brothers owns three registered trademarks used for selling branded food products.[3] (Id. at ¶¶ 6-7.) There are 32 grocery stores in 16 states. (Id. at ¶ 4.) Six of these stores are located in New Jersey, and another[4] is slated to open in late 2007 or early 2008. (Id. at ¶ 5.) The New Jersey stores are located at 1357 Oak Tree Road, Iselin; 1551 Oak Tree Road, Iselin; Route 27, Somerset; and 2 stores in Jersey City, one of which is being renovated.[5] (Supplemental Decl. of Rakesh Patel ¶ 3.) Pursuant to an agreement, Patel Brothers permits Patel Food Mart in Parlin and Patel Food Market in Somerset to use the Patel name. (Id.)

In addition to the grocery stores, Patel Brothers markets branded food products under

---

[2] The service marks are: Patel Brothers; Patel's Cash & Carry; Patel Brothers Cash & Carry; and Patel Foods. (Decl. of Rakesh Patel ¶ 3.) However, Patel Brothers owns service mark registrations for only three of those four marks, namely Patel Brothers, Patel's Cash & Carry, and Patel Brothers Cash & Carry. (Id. at ¶ 6.) Copies of the registrations for Patel Brothers and Patel's Cash & Carry are attached as exhibit A to the Declaration of Rakesh Patel.

[3] The registered trademarks are Patel Brothers, Patel's, and Patel's Cash & Carry. (Decl. of Rakesh Patel ¶ 7.) Plaintiff failed to provide copies of the registration for these trademarks.

[4] The record did not reflect the location of this store.

[5] In Plaintiff's original Declaration, he stated that the stores were located in Jersey City, Newark, Iselin, North Brunswick, Somerset, and Parlin. (Decl of Rakesh Patel ¶ 5.) By contrast, during oral argument, in response to specific questioning by this Court regarding the locations of Plaintiff's stores, Plaintiff's counsel noted that the stores were located in Jersey City, which is in Hudson County, and Iselin, Somerset, and North Brunswick, which are in Middlesex County, while Defendant's store is located in northwestern Essex County. (Tr. 4:24-5:7, Nov. 29, 2007.) Obviously, the information presented to this Court regarding the locations of Plaintiff's stores was somewhat inconsistent. The inconsistency involved the existence of a store in Newark. Since mention of this store was made only once, this Court will not include that store in its analysis.

several trademarks.  (Decl. of Rakesh Patel ¶ 7.)  In August 2007, Bhavesh Patel contacted Patel

Brothers to place a wholesale grocery[6] order for his store, Patel Shah Indian Grocery, located in

Fairfield, New Jersey.  (Id. at ¶ 10; Cert. of Bhavesh Patel in Opp'n to Pl.'s Mot. for a Prelim.

Inj. (hereinafter "Bhavesh Patel Cert.") ¶ 11.)  Upon learning of the impending opening of

Defendant's store, Patel Brothers' counsel advised Defendant of the existence of Patel Brothers'

trademarks and service marks.  (Decl. of Rakesh Patel ¶ 10.)  Defendant did not abandon his

plans to open and this litigation, alleging trademark infringement and unfair competition,[7]

ensued.

## II.  Legal Standard – Preliminary Injunction

"[T]he grant of injunctive relief is an 'extraordinary remedy, which should be granted

only in limited circumstances.'"  Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797,

800 (3d Cir. 1989) (citing Frank's GMC Truck Ctr. Inc. v. Gen. Motors Corp., 847 F.2d 100, 102

(3d Cir. 1988)).  Generally, in determining whether to grant a preliminary injunction or a

temporary restraining order, courts consider four factors:

> (1) the likelihood that the applicant will prevail on the merits at final hearing; (2)
> the extent to which the plaintiffs are being irreparably harmed by the conduct
> complained of; (3) the extent to which the defendants will suffer irreparable harm
> if the preliminary injunction is issued; and (4) the public interest.

S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir. 1992) (citing Hoxworth v.

---

[6] During oral argument, Plaintiff's counsel noted that Patel Brothers is engaged in the retail, not wholesale, grocery business.  Rather, Raja Foods is a grocery wholesaler.  (Tr. 23:6-23:8, Nov. 29, 2007.)  There is no other reference in the record expanding upon the relationship between Raja Foods and Patel Brothers.

[7] Specifically, the Complaint alleges violations of §§ 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125, as well as violations of N.J. STAT. ANN. § 56:3-13.20.  In seeking the preliminary injunction, Plaintiff did not raise any arguments regarding the state dilution claim.

Blinder, Robinson & Co., 903 F.2d 186, 197-98 (3d Cir. 1990)).  "[W]hile the burden rests upon the moving party to make [the first] two requisite showings, the district court" should look to factors three and four when relevant.  Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994).  "All four factors should favor preliminary relief before the injunction will issue."  S & R Corp., 968 F.2d at 374 (citing Hoxworth, 903 F.2d at 192).

In order to prove irreparable harm, the moving party must "demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial."  Acierno, 40 F.3d at 653 (quoting Instant Air Freight Co., 882 F.2d at 801).  "Economic loss does not constitute irreparable harm."  Acierno, 40 F.3d at 653.  "[T]he injury created by a failure to issue the requested injunction must "'be of a peculiar nature, so that compensation in money cannot atone for it.'"  The word irreparable connotes "'that which cannot be repaired, retrieved, put down again [or] atoned for.'"'"  Id. (internal citations omitted).  In addition, the claimed injury cannot merely be possible, speculative or remote.  Id. at 655.  "More than a risk of irreparable harm must be demonstrated.  The requisite for injunctive relief has been characterized as a 'clear showing of immediate irreparable injury,' or a 'presently existing actual threat; an injunction may not be used simply to eliminate a possibility of a remote future injury.'"  Id.  (quoting Cont'l Group, Inc. v. Amoco Chems. Corp., 614 F.2d 351, 358 (3d Cir. 1980)).

**A.  Likelihood of success on the merits**

To prove trademark infringement or unfair competition under the Lanham Act, "a plaintiff must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion."  A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir.

4

2000).  "A likelihood of confusion exists when 'consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark.'"  Id. at 211 (quoting Dranoff-Perlstein Assocs. v. Sklar, 967 F.2d 852, 862 (3d Cir. 1992)).  In determining whether likelihood of confusion exists, regardless of whether the goods or services directly compete, the Third Circuit has set forth a test, which includes consideration of the following factors:

> (1) the degree of similarity between the owner's mark and the alleged infringing mark;
> (2) the strength of the owner's mark;
> (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;
> (4) the length of time the defendant has used the mark without evidence of actual confusion arising;
> (5) the intent of the defendant in adopting the mark;
> (6) the evidence of actual confusion;
> (7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media;
> (8) the extent to which the targets of the parties' sales efforts are the same;
> (9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors;
> (10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.

Id. at 215 (citing  Interpace Corp. v. Lapp, Inc., 721 F.2d 460 (3d Cir. 1983)).

The Third Circuit noted that "the Lapp test is a qualitative inquiry.  Not all factors will be relevant in all cases; further, the different factors may properly be accorded different weights depending on the particular factual setting.  A district court should utilize the factors that seem appropriate to a given situation."  Id.  With that caveat in mind,[8] this Court turns to the ten

---

[8]  Although at oral argument Plaintiff's counsel noted that the "first two Lapp factors, the similarity of the marks and the strength of Patel Brothers as far as marks, control here," (Tr. 3:4-

factors.[9]

### Factor 1: Similarity of the marks

"'The single most important factor in determining likelihood of confusion is mark similarity.'" A&H, 237 F.3d at 216 (quoting Fisons Horticulture v. Vigoro Indus., 30 F.3d 466, 476 (3d Cir. 1994)). "Marks 'are confusingly similar if ordinary consumers would likely conclude that [the two products] share a common source, affiliation, connection or sponsorship.'" Id. (quoting Banff, Ltd. v. Federated Dep't Stores, Inc., 841 F.2d 486, 492 (2d Cir. 1988)). "Side-by-side comparison of the two marks is not the proper method for analysis when the products are not usually sold in such a fashion. Instead, an effort must be made to move into the mind of the roving consumer." Id. That is, the court should look at the sight, sound, and meaning of the marks to determine their similarity. Id. Of course, "[w]hen the dominant portions of the two marks are the same, confusion is likely." Country Floors, Inc. v. P'ship of Gepner and Ford, 930 F.2d 1056, 1065 (3d Cir. 1999).

"While some cases indicate that the first word, prefix or syllable in a mark is always the

---

3:7, Nov. 29, 2007) this Court will evaluate all the factors, as required by Third Circuit precedent. However, after considering all of the factors, this Court concludes that, in light of the evidence and arguments before it, the first two factors should be given the greatest weight in the ultimate balancing of the factors.

[9] "[V]alidity and legal protectability[] are proven where, as here, a mark was federally registered and has become 'incontestable' under the Lanham Act." Fisons Horticulture, Inc. v. Vigoro Indus., Inc, 30 F.3d 466, 472 (3d Cir. 1994). "A trademark becomes incontestable after the owner files affidavits stating that the mark has been registered, that it has been in continuous use for five consecutive years, and that there is no pending proceeding and there has been no adverse decision concerning the registrant's ownership or right to register." Fisons, 30 F.3d at 472 n.7. Since Plaintiff has submitted appropriate affidavits (Decl. of Rakesh Patel ¶ 6), with respect to the marks "Patel Brothers" and "Patel's Cash & Carry," demonstrating the validity and protectability of the marks, this Court may turn to the question of likelihood of confusion.

dominant part, it is impossible to make any generalized statement as to whether the beginning or end of a mark is more important when one or the other is used by another seller."  4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS § 23:45 (2008) (footnotes omitted).  In addition, "[i]t follows logically that disclaimed matter . . . is not usually regarded as the dominant part of a mark."  Country Floors, 930 F.2d at 1065.  Further, the use of a single, non-disclaimed word "is a material, although not necessarily a controlling, consideration" in evaluating a claim of infringement.  Id.  The Third Circuit has recognized that "the proper legal test is not whether there is some confusing similarity between sub-parts of the marks; the overarching question is whether the marks, '*viewed in their entirety*,' are confusingly similar."  Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 713 (3d Cir. 2004) (quoting A&H, 237 F.3d at 216) (emphasis in original).  See also In re Hearst Corp., 982 F.2d 493, 494 (Fed. Cir. 1992) ("Marks tend to be perceived in their entireties, and all components thereof must be given appropriate weight.  The appearance, sight, and commercial impression of VARGA GIRL derive significant contribution from the component 'girl'. . . . When GIRL is given fair weight, along with VARGA, confusion with VARGAS becomes less likely." (internal citations omitted)).

Plaintiff argues that the dominant portions of the marks – the word "Patel" – are identical and therefore confusing.[10]  Defendant disagrees that the dominant portion of the mark is "Patel." Rather, at oral argument, Defendant's counsel noted that "linguistically, as it strikes my ear,

_____

[10]  At oral argument, Plaintiff's counsel stated that Plaintiff has disclaimed "Brothers" and "Cash & Carry."  (Tr. 6:14-6:15, Nov. 29, 2007.)  Defendant's counsel observed that she was unable to locate any disclaimer of the word "Brother" in connection with the Patel trademark registrations.  (Id. at 11:13-11:15.)  This Court agrees.  The registration for "Patel Brothers," attached as exhibit A to the Declaration of Rakesh Patel does not indicate the word "Brothers" is disclaimed.  By contrast, the registration for "Patel's Cash & Carry," also attached as exhibit A to the Declaration of Rakesh Patel, clearly states that "Cash & Carry" is disclaimed.

7

Patel, from a linguistic standpoint, it [is] not the dominant word in the name Patel Brothers, because B.R. has such a strong resonance in the ear.  Again, with Patel Cash & Carry, the Patel – the T sound is strong linguistically."  (Tr. 12:1-12:6, Nov. 29, 2007.)

Courts have considered the linguistic aspects of words when evaluating whether the trademarks are confusingly similar.  For example, in Kos Pharm., the court noted that both words in question – Advicor and Altocor – were "seven-letter three-syllable words that begin and end with the same letters and the same sounds."  Kos Pharm., 369 F.3d at 713.

Applying a similar analysis here, Plaintiff is correct that both marks begin with the name "Patel."[11]  However, it is there that the similarity ends.  To this Court's eye and ear,[12] "Patel Brothers" and "Patel Shah Indian Grocery," or even just "Patel Shah," do not, when considered in their entirety, look or sound alike.  In fact, it is the second word in each mark that has the stronger sound and therefore the greater emphasis.  The "sh" sound in "Shah" and, as Defense counsel noted, the "br" sound in "Brother" both resonate strongly in the ear.  This Court does acknowledge that the "p" and "t" sounds in "Patel" are also strong sounds, but this Court finds

---

[11]  During oral argument, Plaintiff's counsel urged this Court to focus on "Patel," rather than "Patel Brothers" as being the basis for confusion.  (Tr. 7:3-7:6, Nov. 29, 2007 ("I think the consumer is focused on Patel particularly for a couple of reasons: Number one, there is only one Patel in the Indian grocery business in the United States."); Tr. 8:16-8:17, Nov. 29, 2007 ("But the point is, the Patel name has great – it's a famous name in the Indian grocery store business.").)  Since the Third Circuit has emphasized that trademarks must be considered in their entirety, Kos Pharm., 369 F.3d at 713, this Court will heed that admonition and evaluate "Patel Brothers" and "Patel's Cash & Carry" in their entirety.

[12]  This Court acknowledges that this analysis is not scientific.  Rather, it is based on this Court's effort to perceive the sight and sound as the average roving consumer would.  If, at a later stage of this case, the parties were to submit scientific or linguistic analysis of the two marks that contradicted this Court's perceptions, this Court would consider that evidence.  However, at the present time, in the absence of such expert analysis, this Court will rely on its own  perceptions and the arguments and observations of counsel.

that the "sh" and "br" sounds in the second words draw the listener's attention to the second word in each phrase.  As a result, to the ear, the two marks are distinguishable.

Defendant also notes that the name "Patel" is omnipresent in Indian culture, being that it is the second most common Indian surname.  (Cert. of Vanessa R. Elliott, Esq. in Opp'n to Pl.'s Mot. for Prelim. Inj. and in Supp. of Def.'s Cross-Mot. to Dismiss (hereinafter "Elliott Cert.") Ex. A.)   As such, Defendant reasons that persons of Indian background, who are the primary market group for the Indian grocery business, would put less emphasis on the name "Patel" and instead look for other characteristics that distinguish one business using the name "Patel" from another.  (Mem. of Law in Supp. of Def.'s Opp'n to Pl.'s Mot. for Prelim. Inj. and in Supp. of Def.'s Cross-Mot. to Dismiss Pursuant to N.J.S.A. 14A:13-11 [sic.] (hereinafter "Def.'s Mem. of Law") 5.)  This Court agrees.

The Third Circuit has noted, in connection with two names that were both coined words, that "[t]wo names that look and sound similar will naturally seem even more similar where there are no differences in meaning to distinguish them." Kos Pharm., 369 F.3d at 713.  The inverse may also be true; i.e., when names look and sound similar they will seem less similar when there are differences to distinguish them.  Here, the additional words – "Brothers," "Cash & Carry," and "Shah Indian Grocery" – help to distinguish the marks when combined with the common name of "Patel."

Defendant's analogy to common English names highlights this point.  Defendant draws the parallel between Patel Shah Indian Groceries and Johnson Williams American Groceries. Patel and Shah are the second and third most common Indian surnames, while Johnson and Williams are the second and third most common English surnames.  English speakers would not

be likely to confuse Johnson Brothers Cash & Carry with Johnson Williams American Groceries. (Def.'s Mem. of Law 10-11.)

This argument has considerable logical appeal.  Given the frequent use of "Johnson" in business names, a consumer would tend to focus on the distinguishing features of the full name of the business, rather than limiting their focus to the first, very common word.  Similarly, the frequent use of "Patel" would prompt a consumer to look for, and focus on, distinguishing features of the business names.

While "'a subsequent user may not avoid likely confusion by appropriating another's entire mark and adding descriptive or non-descriptive matters to it,'" Fisons, 30 F.3d at 477 (quoting 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS § 23:15 at 23-102 (3d ed. 1992)), that is not the case here.  Defendant did not appropriate "Patel Brothers" or "Patel Cash & Carry," and add descriptive or non-descriptive material to it.  Rather, Defendant took the second most common Indian surname, only a part of Plaintiff's trademark, and added material to it.  The additional words Defendant incorporated into the name of its business include another common Indian surname ("Shah") and the generic terms "Indian Grocery."  "When all is said, if a man allows the good will of his business to become identified with a surname so common as Johnson, it is fair to impose upon him some of the risk that another Johnson may wish to sell goods not very far afield; and he must show a substantial interest if he would seriously impair the second Johnson's privilege to use his own name in customary ways."  S.C. Johnson & Son, Inc. v. Johnson, 116 F.2d 427, 430 (2d Cir. 1940).

Applying that reasoning, Plaintiff has assumed some risk by using the second most common Indian surname as part of its trademark.  However, it is important to note that, unlike

10

the <u>Johnson</u> case, where plaintiff registered "Johnson's" as a trademark, here, "Patel" standing alone is not the mark under consideration. Rather, the registered service mark is "Patel Brothers."[13]  Defendant has not appropriated this mark.

Further distinguishing the marks is the disclaimer Defendant is now using on its advertising. At oral argument, Defendant introduced a recent advertisement that included immediately under the name of the store the statement "We are not affiliated with Patel Brothers." (Tr. 22:13-22:14, Nov. 29, 2007.)  The disclaimer was prominently displayed at the top of the advertisement. The typeface was approximately one quarter inch high, while the name of the store, immediately above the disclaimer, was in typeface that was approximately one half inch high. (Def.'s Ex. 1.)  Defendant's counsel indicated that all of Defendant's advertising now includes this disclaimer. (Tr. 21:2-21:6, Nov. 29, 2007.)

The Third Circuit has looked favorably on the inclusion of disclaimers as a method of distinguishing between trademarks.  <u>A&H</u>, 237 F.3d at 219 ("[T]he District Court committed no legal error in considering the disclaimer. . . [and] the District Court committed no factual error in concluding that Victoria's Secret's disclaimer helped to dispel potential consumer confusion between the Miraclesuit and The Miracle Bra swimwear.").  This Court concludes that the use of the disclaimer in the present case further distinguishes the two marks.

Based on the differences in sight and sound of the two marks, as well as the fact that the common name "Patel" has additional information associated with it in both marks, this Court

---

[13]  Although "Patel's" is one of the trademarks Plaintiff states it has registered, that mark is registered for branded food products, and not for the retail grocery business. (Decl. of Rakesh Patel ¶¶ 3, 6-7.)  Plaintiff's argument here is focused on the "Patel Brothers" mark. (Tr. 10:20-10:24, 23:21-23:22,  Nov. 29, 2007.)

concludes that the marks are not confusingly similar, and would not likely be confused in the mind of the roving consumer, viewed separately. Additionally, the disclaimer included in Defendant's advertising further distinguishes the marks. This factor weighs heavily in Defendant's favor.

**Factor 2: Strength of mark**

"Distinctiveness on the scale of trademarks is one measure of a mark's strength [while] [c]ommercial strength, or marketplace recognition of the mark, is another." Fisons, 30 F.3d at 479 (internal citations omitted). "The first prong of this test looks to the inherent features of the mark; the second looks to factual evidence of 'marketplace recognition.'" A&H, 237 F.3d at 221 (citing Fisons, 30 F.3d at 479).

First part of test – distinctiveness or conceptual strength

In determining if a mark is protectable, there are four classifications of marks: generic, descriptive, suggestive, and arbitrary or fanciful. Generic marks are not protectable. However, "[t]he classification of a mark as arbitrary, suggestive, or descriptive is only secondarily used to determine the degree of protection a mark should receive once protectability has been established." A&H, 237 F.3d at 222. "Although the wide use of a term within the market at issue is more probative than the wide use of a term in other markets, the extensive use of the term in other markets may also have a weakening effect on the strength of the mark." Id. (citing Fisons, 30 F.3d at 479). "The relevance of such other uses of similar marks is apparent; if a consumer is aware that a particular mark . . . is often used to designate a variety of products made by a variety of manufacturers, that consumer will be less likely to assume that in a particular case, two individual products, both with the [same] mark . . ., come from the same source." Id.

12

(citing <u>Steve's Ice Cream v. Steve's Famous Hot Dogs</u>, 3 U.S.P.Q.2d 1477, 1479 (T.T.A.B.

1987) ("[T]he numerous third-party uses [of Steve's] demonstrate that the purchasing public has

become conditioned to recognize that many businesses  . . . use the term . . . and . . . is able to

distinguish between these businesses based on small distinctions among the marks.") and <u>S.C.</u>

<u>Johnson & Son, Inc. v. Johnson</u>, 116 F.2d 427, 430 (2d Cir. 1940) ("When all is said, if a man

allows the good will of his business to become identified with a surname so common as Johnson,

it is fair to impose upon him some of the risk that another Johnson may wish to sell goods not

very far afield.")).

   Plaintiff argues that its mark is descriptive and therefore entitled to protection.  For

purposes of evaluating the merits of the request for a preliminary injunction, this Court will

accept Plaintiff's categorization of the mark as descriptive.[14]  "The short of it is that, whatever

category of distinctiveness into which the mark falls, the multiple uses of [a particular word] in

other markets is relevant to a determination of [plaintiff's] mark's strength."  <u>A&H</u>, 237 F.3d at

224.

   Here, Defendant has produced evidence that there are 131[15] other businesses registered in

---

  [14]  This Court notes that the Third Circuit has observed that "[a] mark is considered descriptive if it describes the 'intended purpose, function, or use of the goods; of the size of the goods, of the class of users of the goods, or of the end effect upon the user.'"  <u>Checkpoint Sys.,</u> <u>Inc. v. Check Point Software Tech.</u>, 269 F.3d 270, 282 (3d Cir. 2001).  While this Court would agree that "Patel's Cash & Carry" does describe the business, "Patel Brothers" does not convey this same message.  However, for purposes of the present analysis, the distinction between the classifications of descriptive, suggestive, and arbitrary is not material.

  [15]  Plaintiff conducted a close examination of these businesses, commenting on the fact that few of these businesses are involved in the Indian grocery business and that several of them are defunct.  (Supplemental Decl. of Rakesh Patel ¶¶ 2-10.))  The fact that few, if any, of these 131 businesses use the name "Patel" as the first word in their business name in connection with the Indian grocery business supports Plaintiff's position regarding the distinctiveness of the name

New Jersey that use the surname Patel as the first word in their business name.  (Elliott Cert., Ex. C.)  In addition to food or grocery stores, the businesses include, but are not limited to, asset management, automotive repair, chiropractor, construction, real estate, eye care, landscaping, law firm, mortgage broker, appliances, fashion, and publishing.  The extensive use of the name "Patel" in non-grocery store contexts tends to weaken the mark since it makes the mark less distinctive and requires consumers to make an effort to distinguish between marks using the name "Patel," particularly, since the name represents a wide variety of businesses.

Plaintiff rebuts many of the uses of "Patel" in connection with grocery and food services and concludes that, with the exception of a store in Brooklyn, N.Y., all of the Indian grocery businesses that use the name "Patel" are licensees of Patel Brothers or are no longer in business. (Supplemental Decl. of Rakesh Patel ¶¶ 2-10.)  However, the prevalence of "Patel" as the first word in numerous businesses requires consumers  to exercise care and look to the remaining words in the business name in making purchasing decisions.  As a result, the name "Patel" alone cannot mean Indian groceries.

Second part of test – marketplace recognition

Plaintiff argues that its extensive advertising, the length of use of the mark, and the expansion of the business to include 32 stores in 16 states[16] demonstrate that the mark has a high level of commercial strength.  Patel Brothers opened its first store in 1974.  (Decl. of Rakesh

───────────────

"Patel" in the Indian grocery business.  However, the extensive use of the name "Patel" in connection with a wide variety of businesses more strongly supports the proposition that consumers will look beyond the name "Patel" when making purchasing decisions.

[16]  Although Defendant did not challenge Plaintiff's characterization of its business as being a national entity, this Court notes that having stores in 16 states – approximately one quarter of the country – does not necessarily translate into a national presence.

14

Patel ¶ 2.)  From 2000-2005, Patel Brothers spent over $728,405 in national advertising; currently, Patel Brothers spends $50,000 per month on national advertising.[17]  (Id. at ¶ 8.)  Patel Brothers also maintains a website – patelbrothersusa.com – to advertise and sell its products.  (Id. at ¶9.)  The Third Circuit has noted that "[a]lthough evidence of money spent does not automatically translate into consumer recognition, it is clearly relevant."  A&H, 237 F.3d at 224.

Plaintiff also submitted searches from Google that include customer testimonials about Patel Brothers.  (Supplemental Decl. of Charles Quinn Ex. A; Tr. 10:8-10:16, Nov. 29, 2007.)  The only other evidence Plaintiff offers in support of its claim of marketplace strength is a statement from Rakesh Patel that Patel Brothers is "an industry leader in the Indian grocery store and food business" and that "Patel Brothers has become the largest grocer of Indian food products in the United States."  (Decl. of Rakesh Patel ¶ 3.)  Defendant does not contest this assertion.[18]

---

[17]  Plaintiff's representations regarding the current advertising expenditures are inconsistent.  In the declaration filed with the initial brief, Plaintiff stated that Patel Brothers currently spends $50,000 per month on national advertising.  (Decl. of Rakesh Patel ¶ 8).  However, Plaintiff's supplemental declaration, filed with the reply brief, indicates that Patel Brothers only spends $300,000 annually, or half of the original amount, on national advertising.  (Supplemental Decl. of Rakesh Patel ¶ 15.)

[18]  Although Defendant does not contest Plaintiff's assertion that Patel Brothers is the largest Indian grocer in the United States, this Court is disinclined to give great weight to this self-serving assertion.  Rather, this Court believes that some extrinsic evidence, such as a statement in a trade publication, should exist to support Plaintiff's claim.  The Third Circuit has observed that in preliminary injunction proceedings, "[t]he weight to which [affidavits] are entitled may of course vary greatly depending on the facts and circumstances of a given case."  Kos Pharm., 369 F.3d at 719.  Exercising the discretion the Third Circuit has afforded district courts in evaluating the evidence presented, this Court concludes that these self-serving statements are not entitled to great weight.  Cf. Freedom Card, Inc. v. JPMorgan Chase & Co., 432 F.3d 463, 478 (3d Cir. 2005) ("[Plaintiff] now invites us to ignore Moon's silence and focus on Buford's uncorroborated and self serving [sic] proclamations.  That is an invitation we must decline.").

Balancing the advertising amounts with the extensive use of the name "Patel" in a variety of other businesses, this Court concludes that there is some evidence supporting the assertion that the "Patel Brothers" mark is strong with respect to the business of Indian groceries.  The evidence supporting this conclusion includes the extensive advertising, the length of time the stores have been in business, and, to a lesser extent, the apparent concession from Defendant that the "Patel Brothers" mark has market strength.  However, given the evidence presently before this Court, this level of market strength is substantially weakened by the extensive use of the name "Patel" in a large variety of businesses.

**Factor 3: Care and attention expected of consumers**

"The third Lapp factor focuses on 'the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase.'  'The following non-exhaustive considerations should guide a court's determination of the standard of ordinary care for a particular product.  Inexpensive goods require consumers to exercise less care in their selection than expensive ones.  The more important the use of a product, the more care that must be exercised in its selection.  In addition, the degree of caution used depends on the relevant buying class.  That is, some buyer classes, for example, professional buyers will be held to a higher standard of care than others.  Where the buyer class consists of both professional buyers and consumers, the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class.'"  McNeil Nutritionals, LLC v. Heartland Sweetners, LLC, 511 F.3d 350, 363-64 (3d Cir. 2007) (citing Lapp, 721 F.2d 463 and Versa Prods. Co. v. Bifold Co., 50 F.3d 189, 204-05 (3d Cir. 1995) (internal quotation marks, ellipses, and citation omitted)).

16

Plaintiff argues that "Patel Brothers' and defendant's grocery store services feature a wide range of relatively low priced [sic] goods, including extremely inexpensive products." (Pl's. Mem. in Support of Mot. for Prelim. Injunctive Relief (hereinafter "Pl's. Mem.") 11.) It is true that the individual items in the respective stores have a wide range of prices. See, e.g., Grand Opening Sale Flyer for Patel Shah Indian Grocery, attached at Ex. C to Decl. of Rakesh Patel (hereinafter "Sale Flyer") (compare "Maya Safron [sic], 1 oz. box only $33.99" to "Black Pepper Whole – 2 lb. – $5.99"). However, the average household in the New York metropolitan area[19] spends 13.5% of its income on groceries, which constitutes the third largest budget category, following shelter and transportation. News Release, Consumer Expenditures in the Greater New York Area, 2004-05 (May 30, 2007), *available at* **http://www.bls.gov/ro2/ce9805.pdf.** As a result, even though the price of individual items might lead one to believe consumers exercise little care in the selection of groceries, the significant portion of income spent on total grocery expenditures would indicate that consumers might tend to exercise greater care in their purchasing decisions. Neither party provided sufficient evidence to elucidate this factor. Given the lack of evidence presented by the parties with respect to this factor, this Court cannot adequately assess it and neither party has created an advantage. The parties are in equipoise regarding this factor.

**Factor 4: Length of time defendant has used the mark**

"When parties have used similar marks for a sufficient period of time without evidence of

---

[19] The Bureau of Labor Statistics defines the New York Metropolitan area to include the counties of Bergen, Essex, Hudson, Hunterdon, Mercer, Middlesex, Monmouth, Morris, Ocean, Passaic, Somerset, Sussex, and Union in New Jersey. News Release, Consumer Expenditures in the Greater New York Area, 2004-05 (May 30, 2007), *available at* **http://www.bls.gov/ro2/ce9805.pdf.**

consumer confusion about the source of the products, there is an inference that future consumers will not be confused either." Fisons, 30 F.3d at 476 (citing Scott Paper Co. v. Scott's Liquid Gold, Inc., 589 F.2d 1225, 1230 (3d Cir. 1978) (finding no likelihood of confusion in part because "defendant's mark had been utilized . . . for over forty years without any evidence of actual confusion.")).

Defendant's store opened in September 2007. (Tr. 15:4-15:5, Nov. 29, 2007.) As such, there has not been enough time during which both marks were used to be able to apply this factor.

**Factor 5: Intent of defendant**

"Intent is relevant to the extent that it bears on the likelihood of confusion. . . . [D]efendant's intent will indicate a likelihood of confusion only if an intent to *confuse* consumers is demonstrated via purposeful manipulation of the junior mark to resemble the senior's." A&H, 237 F.3d at 225-25 (emphasis in original). Defendant states that he adopted the mark in order to combine his surname and his wife's maiden surname. (Bhavesh Patel Cert. ¶ 2.) Further, Defendant stated that he believed the combination of the two very common Indian surnames with the words "Indian Grocery Store" created a distinctive name and trademark. (Id. ¶ 3.) Plaintiff offered no evidence contradicting Defendant's representations that his intent in adopting the name "Patel Shah Indian Grocery" was innocent. As a result, this factor weighs in favor of Defendant.

**Factor 6: Evidence of actual confusion**

Plaintiff offered no evidence of actual confusion. Defendant stated that, to his knowledge, none of his customers has ever confused his store with Plaintiff's businesses.

18

(Bhavesh Patel Cert. ¶ 7.)

"Evidence of actual confusion is not required to prove likelihood of confusion."

Checkpoint, 269 F.3d at 291 (citing Versa Prods., 50 F.3d at 205; Fisons, 30 F.3d at 476

("[W]hile evidence of actual confusion would strengthen plaintiff's case, it is not essential.")).

See also Optician's Ass'n of America v. Indep. Opticians of America, 920 F.2d 187, 195 (3d Cir.

1990) ("Proof of actual confusion is not necessary; likelihood is all that need be shown.").

The Third Circuit has "recognized that it is difficult to find evidence of actual confusion

because many instances are unreported.  For this reason, evidence of actual confusion may be

highly probative of the likelihood of confusion."  Checkpoint, 269 F.3d at 291.  However, "[i]f a

defendant's product has been sold for an appreciable period of time without evidence of actual

confusion, one can infer that continued marketing will not lead to consumer confusion in the

future.  The longer the challenged product has been in use, the stronger this inference will be."

Versa Prods., 50 F.3d at 205.

Here, the complaint and request for preliminary injunction were filed on September 13,

2007, the same day Defendant's grand opening sale began.  As a result, the businesses did not

operate simultaneously for any period of time that would have allowed any examples of actual

confusion to occur.  Therefore, this factor adds nothing to this Court's analysis.

### Factor 7: Goods marketed through the same channels of trade and advertised through the same media

"Courts have recognized that 'the greater the similarity in advertising and marketing

campaigns, the greater the likelihood of confusion.'  Applying this factor, courts must examine

the trade exhibitions, publications and other media the parties use in marketing their products as

well as the manner in which the parties use their sales forces to sell their products to consumers."
Checkpoint, 269 F.3d at 288-89 (quoting Acxiom Corp. v. Axiom, Inc., 27 F. Supp. 2d 478, 502
(D. Del. 1998)).

Plaintiff asserts that it markets its stores and products nationally using various media.
During oral argument, Plaintiff's counsel stated that "Patel Brothers advertises nationally on the
Indian channel, several other Pakistani ones – we advertise in the leading Indian language
newspaper in the United States, the leading Pakistani newspaper."[20]   (Tr. 5:12-5:15, Nov. 29,
2007.)

Plaintiff also prints flyers, brochures, calendars, and other materials.  (Supplemental Decl.
of Rakesh Patel ¶ 20.)  Local Patel affiliates supplement the national advertising.  (Supplemental
Decl. of Rakesh Patel ¶ 21.)

By contrast, Defendant only markets to consumers in the local community, which is
Fairfield, New Jersey, a community in Essex County.  (Bhavesh Patel Cert. ¶ 4; see also Tr.
18:10-18:18, Nov. 29, 2007.)

This Court concludes that the two stores do not market their goods through the same
channels of trade, nor do they advertise in the same media.  Plaintiff's advertising efforts are
extensive, and conducted on a national basis, while Defendant's advertising is limited to printing

---

[20]   More specifically, Plaintiff advertises on various radio and television stations,
including:  Sony Entertainment Television (Set), which is an Indian language satellite channel
operated by Sony; ZEE TV, the largest Indian language cable channel in America; AVS TV,
serving the NY/NJ area; Aaj Tak and Headlines Today on TV Asia; B4U Music; Sahara One;
ITV's NY channel; and ARY Digital TV (a Pakistani channel).  (Supplemental Decl. of Rakesh
Patel ¶¶ 16-17.)  Plaintiff also advertises in newspapers, magazines, and trade publications with
circulation in South Asian neighborhoods.  Examples include: Gujarat Samachar, the largest
Indian language newspaper in the US; the India Post; the India Tribune; Star Dust, which is the
Indian "People Magazine"; and Pakistan Post.  (Supplemental Decl. of Rakesh Patel ¶ 19.)

flyers which apparently are distributed in the local community.  Although Plaintiff indicated that local affiliates supplement Patel Brother's national advertising, there is no evidence that any of the New Jersey affiliates advertise locally in either Fairfield, New Jersey or Essex County, New Jersey.  Rather, Patel Brothers' New Jersey stores are located in Middlesex County, Somerset County, and Hudson County, and there is no indication in the record that advertising from those stores reaches Essex County.

While it is possible, and in fact, probable, that Plaintiff's national advertising reaches consumers in Essex County, the impact of that overlap is more appropriately considered as part of the next factor – whether the targets of the companies' sales efforts are the same.

**Factor 8: Targets of sales efforts are the same**

Defendant stated that the target audience for its advertising and sales efforts is the Indian and Pakistani community in Fairfield, New Jersey, and Essex County, New Jersey.  (Tr. 18:10-18:18, Nov. 29, 2007.)  Specifically, the "customer base are people who live within the neighborhood, who run out to the closest place you can find that's going to offer you what you need."  (Tr. 18:11-18:14, Nov. 29, 2007.)

Plaintiff advertises to the Indian and Pakistani community on a national basis. (Supplemental Decl. of Rakesh Patel ¶¶ 15-20.)  This extensive advertising is supplemented by the individual Patel Brothers' stores.[21]  (Id. at ¶ 21.)  Specifically, Patel Brothers "frequently

---

[21]   The examples of local advertising supplied by Plaintiff do not appear to reach northwestern Essex County. (See, e.g., Supplemental Decl. of Rakesh Patel, Ex. T (advertisement in program for 10th Annual Diwali Convention, North Brunswick, N.J.; advertisement in program for 8th Annual Diwali Convention in Fords, N.J.; advertisement in program for India Cultural Ass'n of Central Jersey Spring Festival 2005; advertisement in program for Evening of Contemporary Dance & Classical Music in Monmouth Junction, N.J.; and advertisement in program for prayer service at Shri Dwarkadhish Temple in Parlin, N.J.).)

places advertisements in newspapers and magazines, as well as trade publications, with substantial circulations in South Asian neighborhoods throughout the United States, including North Jersey."  (Id. at ¶ 19.)[22]

"[W]hen parties target their sales efforts to the same consumers, there is a stronger likelihood of confusion."  Checkpoint, 269 F.3d at 289.  Given that Plaintiff advertises extensively in the Indian and Pakistani community on a national basis, by necessity, some of Defendant's target audience, namely, members of the Indian and Pakistani community in the Fairfield, New Jersey area, could also be exposed to Plaintiff's advertising.  However, this Court concludes that any adverse impact of this overlap in target audiences is minimized by the difference in the sight and sound of the names, as discussed previously, and by the disclaimer that Defendant has begun using in its advertising.  Therefore, any favorable impact for Plaintiff from this factor is outweighed by these two facts.

**Factor 9: Relationship of the goods in the minds of consumers**

"Under this prong, courts examine whether buyers and users of each parties' goods are likely to encounter the goods of the other, creating an assumption of common source affiliation

---

[22]  During oral argument, this Court took exception to Plaintiff's characterization of all of its New Jersey stores being in "North Jersey."  (Tr. 4:15-5:15, Nov. 29, 2007.)  As Plaintiff's counsel noted, where the line separating north from south in New Jersey is relative, and depends on one's background and perspective.  (Tr. 4:18-4:21, Nov. 29, 2007.)  Plaintiff's Supplemental Declaration does not specify how "North Jersey" is being defined.  Based on Plaintiff's statement that it advertises on ITV's New York television channel, this Court acknowledges that it is likely that this channel's broadcast range includes the Fairfield, New Jersey and Essex County, New Jersey areas.  As a result, this Court will accept that, for purposes of the present request for a preliminary injunction, at least some of Plaintiff's national advertising encompasses the Fairfield, New Jersey and Essex County, New Jersey areas.

or sponsorship.  The test is whether the goods are similar enough that a customer would assume

they were offered by the same source."  <u>Checkpoint</u>, 269 F.3d at 286 (citing <u>Fisons</u>, 30 F.3d at

481 ("The question is whether the consumer might . . . reasonably conclude that one company

would offer both of these related products.") and <u>Wynn Oil Co. v. Thomas</u>, 839 F.2d 1183, 1187

(6th Cir.1988)).

Plaintiff argues that the use of the marks is identical; namely, the marks are being used to

market Indian groceries.  (Pl's. Mem. 11-12.)  This Court agrees.   Defendant attempts to conflate

this factor with the question of actual confusion.  (Def.'s Mem. of Law 17.)  However, these

factors are distinct.  The lack of evidence of actual confusion does not negate the fact that the

similarity of the goods, namely, Indian groceries, could allow consumers to assume the goods

were offered by the same source.  This factor weighs in favor of Plaintiff.

**Factor 10: Other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.**

"Under this factor we look not only to evidence that a plaintiff has actually moved into

the defendant's market, but also to 'other facts suggesting that the consuming public might

expect the prior owner to manufacture a product in the defendant's market, or that it is likely to

expand into that market.'  Evaluating this factor, courts look to evidence that other companies

sell products in both markets, as well as evidence that the products at issue are so closely related

that the consuming public might find it natural for one company to do so."  <u>Checkpoint</u>, 269 F.3d

at 290 (quoting <u>Lapp</u>, 721 F.2d at 463).

As already discussed, this Court concludes that the Defendant is not operating a store in

the same market as Plaintiff.  Plaintiff introduced no evidence regarding its intention to expand into Defendant's market.  Further, Defendant is now using a disclaimer on its advertising (Tr. 21:2-21:6, Nov. 29, 2007), which serves to distinguish it from Plaintiff and would dissuade consumers from thinking Defendant's store is owned and operated by Plaintiff.

Based on the lack of evidence regarding Plaintiff's potential expansion into the Fairfield, New Jersey market, as well as the use of the disclaimer by Defendant, this Court concludes that this factor weighs in favor of Defendant.

**Balancing of factors**

Balancing all of the factors, this Court concludes that there is no likelihood of confusion between Plaintiff's marks – "Patel Brothers" and "Patel's Cash & Carry" – and Defendant's mark – "Patel Shah Indian Grocery."  Weighing most heavily in favor of this conclusion is this Court's finding with respect to factor 1 that the sight and sound of the marks are not similar.  Further, under factor 2, the strength of Plaintiff's marks is diluted by the extensive use of the surname "Patel" to represent a variety of other businesses.  As a result, this factor is neutral.  This Court lacks sufficient evidence to evaluate several factors; specifically 3, 4, and 6, and therefore treats them as neutral.  Factor 5 – intent of the defendant – weighs in favor of Defendant.

As to factor 7, this Court concludes that the two stores do not market their goods through the same channels of trade, nor do they advertise in the same media, resulting in this factor weighing in favor of Defendant.  As to factor 8, this Court concludes that both Plaintiff and Defendant target their sales efforts to the same group of consumers – members of the Indian and Pakistani community – resulting in this factor weighing in favor of Plaintiff.  Factor 9 – relationship of the goods in the minds of consumers – also weighs in favor of Plaintiff.

However, these two factors are far outweighed by the lack of similarity between the marks, as well as the use of the disclaimer.  Finally, factor 10 also weighs in favor of Defendant due to the lack of evidence of Plaintiff's potential expansion into the Fairfield, New Jersey market, combined with Defendant's use of the disclaimer.

Considering all of the factors as a whole, this Court concludes that Plaintiff is not likely to succeed on the merits of this case.

**B.  Irreparable Harm to Plaintiff**

"'Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will.'  Lack of control over one's mark 'creates the potential for damage to . . . reputation[, which] constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case.'  Thus, 'trademark infringement amounts to irreparable injury as a matter of law.'  '[O]nce the likelihood of confusion caused by trademark infringement has been established, the inescapable conclusion is that there was also irreparable injury.'"  Kos Pharm., 369 F.3d at 726 (citations omitted).

Since this Court has concluded that there is no likelihood of confusion between the marks, there, likewise, is no indication that there would be any irreparable injury to Plaintiff.

**C.  Irreparable Harm to Defendant**

Defendant provided no argument as to any potential irreparable injury it would suffer if the request for a preliminary injunction were granted.  In evaluating claims of irreparable harm, the Third Circuit has looked to facts specifically presented in connection with the potential harm. These facts include, but are not limited to, evidence of  potential financial loss, whether the financial loss was self-imposed based on the choice of business name, and whether the defendant

25

had any prior knowledge of the potential infringement.  See, e.g., Optician's Ass'n of America, 920 F.2d at 197; Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 596 (3d Cir. 2002).  Having had no facts presented to it with respect to harm to Defendant, this Court is unable to evaluate this point.

### D.  The Public Interest

"Public interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused."  Optician's Ass'n of America, 920 F.2d at 197.  Since this Court has concluded that there is no likelihood of confusion, the public interest will not be harmed if a preliminary injunction is not granted at this time.

## III.  Conclusion

After evaluating the Lapp factors, this Court concludes that there is no likelihood of confusion between Plaintiff's and Defendant's marks.  As a result, this Court finds that Plaintiff is not likely to succeed on the merits of this case, and will not be irreparably harmed if a preliminary injunction does not issue.  Similarly, the lack of likelihood of confusion results in no harm to the public if a preliminary injunction does not issue.  For these reasons, Plaintiff's request for a preliminary injunction prohibiting defendant, Patel Shah Indian Grocery, from using the name "Patel" or any similar name in commerce, and ordering Defendant to retract and impound all labels, signs, prints, packages, and advertisements bearing the name "Patel" or any variation of it will be denied.

Dated:  June 27, 2008


 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

26